<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|   |   |
|---|---|
| LARRY GRAFAS, 608 GREEN AVENUE ASSOCIATES LLC, and HOFFMAN'S RESTAURANTS LLC<br><br>Plaintiffs,<br>v.<br><br>BOROUGH OF BRIELLE; PLANNING BOARD OF BOROUGH OF BRIELLE; and JOHN DOES 1-10,<br><br>Defendants. | Case No. 3:19-cv-9467-BRM-LHG<br><br><br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is a Motion filed by Defendant Borough of Brielle ("Brielle") to dismiss Plaintiffs Larry Grafas, 608 Green Avenue Associates LLC, and Hoffman's Restaurants LLC's (collectively, "Plaintiffs") Complaint. (ECF No. 12.) Also before the Court is Defendant Planning Board of Borough of Brielle's (the "Board") Motion to Dismiss Plaintiffs' Complaint. (ECF No. 14.) Both Motions are opposed. (ECF No. 18.) Having reviewed the submissions filed in connection with the motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause appearing, Brielle's Motion to Dismiss is **DENIED** and the Board's Motion to Dismiss is **DENIED**.

**I.    BACKGROUND**

For the purposes of this Motion to Dismiss, the Court accepts the factual allegations in the Amended Complaint as true and draws all inferences in the light most favorable to Plaintiffs. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Furthermore, the Court also

considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

This matter stems from allegedly discriminatory actions taken by Brielle through its Board, the members of its administration, and its council (the "Council") against Plaintiffs. Plaintiff Larry Grafas ("Grafas") is the sole member of Plaintiffs 608 Green Avenue Associates ("608 Associates") and Hoffman's Restaurant LLC ("Hoffman") d/b/a Waypoint 622 ("Waypoint"). (ECF No. 1 ¶ 6.)

On January 9, 2015, Grafas, through 608 Associates purchased the bar/restaurant formally known as Union Landing ("UL") in Brielle, which included a liquor license. (*Id.* ¶ 10.) In anticipation of Waypoint's Memorial Day Weekend opening, Grafas commenced significant improvements (the "Improvements") to the restaurant that were overseen and approved by Elissa Commins ("Commins"), the Zoning Official of Brielle. (*Id.* ¶ 12.) However, despite prior approval of the Improvements, Brielle—in response to complaints by Waypoint's neighbors—formed a committee to investigate whether the Improvements violated local ordinances (the "Committee"). (*Id.* ¶ 15.) The Committee, through member and Board engineer Allan Hilla ("Hilla"), issued a report (the "Report") citing: "(i) de minimis inconsistencies from the previously approved Improvements and (ii) various supposed land use violations (some of which were already existing when Mr. Grafas purchased the property)." (*Id.*) The Report threatened Grafas with fines and possible imprisonment if he did not remediate the cited conditions. (*Id.*)

In response, Grafas appealed the Report and simultaneously filed a formal site plan application (the "Site Plan Application") with the Board. (*Id.* ¶ 16.) While the Site Plan Application was before the Board, the Council passed an ordinance limiting all bands in Brielle establishments

to a maximum of three pieces. (*Id.* ¶ 17.) Soon after, an objector took an unauthorized video of a band with more than three pieces playing at Waypoint and sent the video to Brielle. (*Id.*) Grafas received a summons for violating the ordinance, which was eventually dismissed after Grafas challenged the summons and charges. (*Id.*)

Additionally, in 2016, the Council passed an ordinance which prevented the operation of any instrument, amplifier, or device that can be heard at a distance of 100 feet. (*Id.* ¶ 23.) A member of the Brielle Police Department hand-delivered a copy of the site plan for Waypoint to Grafas with a 100-foot radius drawn around the restaurant. (*Id.*) To Grafas's knowledge, no other property owner received such a copy. (*Id.*)

On or about June 26, 2017, Grafas appeared before the Mayor and three other members of the Council for renewal of Hoffman's liquor license (the "Liquor License") (the "2017 Renewal"). (*Id.* ¶ 18.) The 2017 Renewal involved the Council placing additional restrictions on the Liquor License which required Waypoint to (i) close at 11:00 p.m. and (ii) only seat 72 patrons at a time (the "2017 Restrictions"). (*Id.* ¶ 19.) Waypoint is the only restaurant in Brielle to have its liquor license subject to restrictions regarding hours or seating capacity. (*Id.*)

Initially, the Council voted 2-1 in favor of approving the renewal of the Liquor License without the 2017 Restrictions. (*Id.*) However, Brielle's attorney informed the Council that a 2-1 vote was insufficient to pass a resolution and subsequently, after a re-vote, the Council voted 3-0 to renew the Liquor License with the 2017 Restrictions. (*Id.*) In response, Waypoint appealed the Council's decision to the Director of the NJ Division of Alcoholic Beverage Control alleging the original 2-1 vote was valid and the license was therefore lawfully granted without the 2017 Restrictions. (*Id.* ¶ 20.) Thereafter, the Director issued a stay of the enforcement of the 2017 Restrictions and the matter is currently pending before an Administrative Law Judge. (*Id.* ¶ 21.)

On or about April 10, 2018[1], the Board adopted a resolution memorializing its decision on the Site Plan Application. (*Id.* ¶ 24.) In doing so, the Board found: (1) Waypoint is permitted to stay open until 2:00am, (2) Waypoint is permitted to seat approximately 280 patrons at one time, (3) Waypoint is not permitted to allow any bands playing to use amplification, and (4) Waypoint must have a valet during "busy" times. (*Id.*) According to Grafas, no other similar restaurant has been subject to such restrictions. (*Id.*) Furthermore, the Council did not hold a hearing to discuss the 2018 Restrictions or give Plaintiffs the opportunity to present their position. (*Id.*) Consequently, Grafas appealed the Board's decisions in New Jersey Superior Court, where a case is currently pending (the "Superior Court Action"). (*Id.*)

In June of 2018, the Council once again renewed the Liquor License (the "2018 Renewal") with additional restrictions, including that: (1) Waypoint could no longer play live music, and (2) Waypoint was required to have valet parking for its patrons (the "2018 Restrictions"). (*Id.* ¶ 25.) The Council did not hold a hearing to discuss the 2018 Restrictions or give Plaintiffs opportunity to present their position. (*Id.*) As with the 2017 Renewal, the 2018 Renewal is stayed pending the resolution of an appeal before an Administrative Law Judge. (*Id.*)

Finally, in 2018, Brielle removed eight parking spots previously available to Waypoint patrons by prohibiting parking on the street directly in front of Waypoint. (*Id.* ¶ 26.) This action was taken even after Waypoint reconfigured its parking lot to promote traffic flow and safer conditions. (*Id.*)

On April 10, 2019, Plaintiffs filed their two-count Complaint against Defendants for violation of 42 U.S.C. § 1983 (Count Two) and to declare the policy unconstitutional pursuant to

---

[1] The Complaint states the date was April 10, 2017. However, based on the timeline and both Plaintiffs' and Defendants' subsequent moving papers, it is clear Plaintiffs meant April 10, 2018. The Court will construe the date as such.

4

28 U.S.C. § 2201 (Count One). (ECF No. 1.) Brielle and the Board filed answers to the Complaint on June 24, 2019 and June 25, 2019, respectively. (ECF Nos. 6 & 7.) On October 25, 2019, Brielle filed a Motion to Dismiss the Complaint. (ECF No. 12.) On October 28, 2019, the Board filed a Motion to Dismiss the Complaint. (ECF No. 14.) On November 18, 2019, Plaintiffs filed an Opposition to both Motions. (ECF No. 18.) Finally, on October 25, 2019, Brielle and the Board filed Reply Briefs to their respective Motions. (ECF Nos. 19 & 20.)

## II. LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege

5

"more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

While as a general rule, a court many not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to 12(b)(6), the Third Circuit has held "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant under Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426.

### III.   DECISION

As a threshold matter, the Court notes that, because Brielle and the Board filed Answers to the Complaint, they are procedurally barred from filing a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6). However, as the Third Circuit explained, the difference between Rules 12(b), 12(c), and 12(h) are purely procedural: (1) a Rule 12(b) motion to dismiss a complaint must be filed before any responsive pleading; (2) a Rule 12(c) motion for judgment on the pleadings may be filed after

the pleadings are closed; and (3) a Rule 12(h)(2) provides that a defense of failure to state a claim upon which relief can be granted may also be made by a motion for judgment on the pleadings. *Turbe v. Government of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991). For any of the three Rule 12 motions, the same standards as under Rule 12(b)(6) are applied. *Id.* Rules 12(c) and 12(h) permit the filing of the functional equivalent of a motion to dismiss after an answer is filed. Because Brielle and the Board filed Answers and because Plaintiffs have not objected to the filing of their Motions, the Court will apply the Rule 12(b)(6) standard to their Motions and consider them as having been filed under Rule 12(c). *See Sprint Solutions, Inc. v. J&S Invs. of Del., Inc.*, No. 16-1420, 2017 U.S. Dist. LEXIS 13906, at *13 (D.N.J. Jan. 31, 2017).

### A. Abstention

Both Brielle and the Board contend Plaintiffs' Complaint should be dismissed pursuant to the *Younger* abstention doctrine because the underlying issues are currently being litigated in a state court and an administrative agency.

The *Younger* abstention doctrines gives a federal court the "discretion to abstain from exercising jurisdiction over a particular claims where resolution of that claim in federal court would offend the principles of comity by interfering with an ongoing state proceeding." *Addiction Specialists, Inc. v. Twp. of Hampton*, 411 F.3d 399, 408 (3d Cir. 2005) (citing *Younger v. Harris*, 401 U.S. 37 (1971)). However, "abstention rarely should be invoked," *Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992), and is only appropriate "in a few carefully defined situations," *Gwynedd Properties, Inc. v. Lower Gwynedd Twp.*, 970 F.2d 1195, 1199 (3d Cir. 1992.) *Younger* abstention is only appropriate where the following three requirements are satisfied: (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise the federal claims. *Id.* at 1200

(citing *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432, (1982); *Schall v. Joyce*, 885 F.2d 101, 106 (3d Cir. 1989)).

Indeed, in *Sprint Comms., Inc. v. Jacobs*, 571 U.S. 69 (2013), the Supreme Court "narrowed *Younger's* domain." *Malhan v. Sec'y of U.S. Dep't of State*, 938 F.3d 453, 462 (3d Cir. 2019). As a threshold matter, a court must first, before analyzing the above-listed *Middlesex* factors, determine whether the parallel state action falls within one of "three exceptional categories": (1) criminal prosecutions, (2) "certain civil enforcement proceedings," and (3) "civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint*, 571 U.S. at 78.

Both Brielle and the Board contend the Court should abstain from exercising jurisdiction over Plaintiffs' claims because of the currently pending Superior Court Action. (ECF No. 14-1 at 18, ECF No. 12-2 at 18.) However, the Board ignores the first part of the *Younger* analysis and fails to argue the Superior Court Action falls into one of the "exceptional categories." Because the Board has not made this threshold showing, their Motion to Dismiss on abstention grounds is **DENIED.** Conversely, Brielle does address the threshold issue and contends the Superior Court Action is a "civil enforcement proceeding." (ECF No. 12-2 at 19.)

Pursuant to *Sprint*, to be considered a "civil enforcement proceeding," the state proceeding must generally be "akin to a criminal prosecution" and, if it is, is therefore said to be "quasi-criminal" in nature. *Sprint*, 571 U.S. at 78.

"[Q]uasi-criminal proceedings of this ilk share several distinguishing features." *Gonzalez v. Waterfront Comm'n of N.Y. Harbor*, 755 F.3d 176, 181 (3d Cir. 2014). For instance, the proceeding will "characteristically [be] initiated to sanction the federal plaintiff, i.e., the party challenging the state action, for some wrongful act." *Sprint*, 571 U.S. at 79. This is more than

8

simply "negative consequences." *ACRA Turf Club, LLC v. Zanzuccki*, 748 F.3d 127, 140 (3d Cir. 2014). "Sanctions are retributive in nature and are typically imposed to punish the sanctioned party 'for some wrongful act.'" *Id.* (quoting *Sprint*, 571 U.S. at 79). Sanctions must be more than the mere "cost of doing business, with the choice of whether to make such payment resting entirely with Plaintiffs." *Id.*

Additionally, "a state actor [will] routinely [be] a party to the state proceeding and often initiates the action." Sprint, 571 U.S. at 79. "To be sure, the Supreme Court has not directly held that Younger applies only when a state actor files a complaint or formal charges." *ACRA Turf Club*, 748 F.3d at 140. However, "the state's 'initiation' procedure must proceed with greater formality than merely sending a targeted advisory notice to a class of people that may be affected by new legislation." *Id.*

Often, "the proceeding [will be] both in aid of and closely related to criminal statutes." *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975). A proceeding is more likely to be quasi-criminal if "the State could have alternatively sought to enforce a parallel criminal statute" that "vindicates similar interests." *ACRA Turf Club*, 748 F.3d at 138; *see also Trainor v. Hernandez*, 431 U.S. 434, 444 (1977); *Gonzalez*, 755 F.3d at 182. For that reason, "[i]nvestigations are commonly involved, often culminating in the filing of a formal complaint or charges." *Sprint*, 571 U.S. at 79-80; *see also Gonzalez*, 755 F.3d at 182.

While quasi-criminal proceedings may share many attributes with actual criminal prosecutions, they will differ in one key respect: unlike a criminal prosecution, a quasi-criminal proceeding need not occur before the state's judiciary. To the contrary, abstention will apply "to state administrative proceedings in which important state interests are vindicated, so long as in the course of those proceedings the federal plaintiff would have a full and fair opportunity to litigate

9

his constitutional claim." *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 627 (1986); *see also Gonzalez*, 755 F.3d at 182 (describing a state administrative proceeding as "a textbook example of a quasi-criminal action").

Brielle contends the Superior Court Action is a quasi-criminal proceeding because it "stemmed from the August 7, 2015 Notices of Violations issued by the Borough's Zoning Officer to Mr. Grafas in regards to numerous zoning violations committed on the Waypoint Property." (ECF No. 12-2 at 21.) However, the Superior Court Action—while related to the 2015 Notices of Violations—chiefly concerns a separate site plan proceeding before the Board. (ECF No. 18 at 23.) While Plaintiffs were subject to certain penalties based on Brielle ordinances, Plaintiffs separately filed with the Board an application for preliminary and final site plan approval. (ECF No. 12-3, Exs. F-G.) Ultimately, after public hearings on the site plan application spanning from 2016 through 2018, the Board adopted the Site Plan Resolution in April 2018. (*See id.*, Ex. H at 6.) It is this resolution from which Plaintiffs' seek relief in the Superior Court Action. (*See id.*, Ex. I.) Indeed, the Superior Court Action is merely a review of the Site Plan Resolution pursuant to N.J. Court Rule 4:69.

Ultimately, the Superior Court Action lacks the requisite quasi-criminal character. The Site Plan Resolution was not designed to sanction Plaintiffs for any wrongful act. Additionally, it was not an investigation, nor did it constitute a formal complaint or criminal charge. Finally, Brielle has not identified any criminal statutes aided by or related to the Site Plan Resolution. Rather, the Superior Court Action is an appellate continuation of the municipal site plan approval. *See Kane Properties, LLC v. City of Hoboken*, 68 A.3d 1274 (N.J. 2013). Taken together, the above facts indicate the Superior Court Action is not a civil enforcement proceeding. *See McNamara v. Grewal*, No. 19-173, 2019 U.S. Dist. LEXIS 188288, at *14 (D.N.J. Oct. 29, 2019) (declining to

apply *Younger* abstention where defendant failed to make a threshold showing of a quasi-criminal proceeding). Therefore, Brielle has failed to make a threshold showing under *Younger*. Accordingly, Brielle's Motion to Dismiss is **DENIED.**

### B. Entire Controversy Doctrine

While Brielle's Motion to Dismiss is only based on a theory of abstention, the Board contends the Complaint should be dismissed under the entire controversy doctrine. (ECF No. 14-1 at 22.)

"[T]he entire controversy doctrine applies only when a prior action based on the same transactional facts has been [1] tried to judgment or [2] settled." *U.S. ex rel. Charte v. Am. Tutor, Inc.*, 934 F.3d 346, 351-52 (3d Cir. 2019). Indeed, for the entire controversy doctrine to be applicable, there needs to exist a settlement or "a prior judgment that is final, valid, and on the merits." *Rycocline Prod., Inc. v. C & W Unlimited*, 109 F.3d 883, 889 (3d Cir. 1997). The Board concedes the Superior Court Action is currently pending. (ECF No. 14-1 at 22.) As such, there is no valid final judgment on the merits. Accordingly, the Board's Motion to Dismiss on these grounds is **DENIED.**

### C. 12(c)

Finally, the Board contends the Complaint should be dismissed because Plaintiffs have failed to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 14-1 at 12.)

To state a claim for relief under § 1983, a plaintiff must allege: (1) the violation of a constitutional right, and (2) the alleged deprivation was committed or caused by a person acting under color of state law. *See Evans v. Gloucester Twp.*, 124 F. Supp. 3d 340, 356 (D.N.J. 2015). To state a claim for municipal liability under § 1983, a plaintiff must "identity a municipal policy or custom that caused the plaintiff's injury." *Kriss v. Fayette Cnty.*, 504 F. App'x 182, 187 (3d Cir.

2012) (citing *Bd. of Cnty. Comm'rs of Bryan Cnty. V. Brown.*, 520 U.S. 397, 403 (1997)). "[A]n unconstitutional policy c[an] be inferred from a single decision taken by the highest officials responsible for setting policy in that area of the government's business." *Brennan v. Norton*, 350 F.3d 399, 428 (3d Cir. 2003) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988)). This Circuit has observed the Supreme Court's pronouncement of this theory of liability in *Pembaur v. City of Cincinnati*:

> [I]t is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances. No one has ever doubted, for instance, that a municipality may be liable under § 1983 for a single decision by its properly constituted legislative body - whether or not that body had taken similar action in the past or intended to do so in the future - because even a single decision by such a body unquestionably constitutes an act of official government policy.

475 U.S. 469 (1986) (citations omitted).

Plaintiffs' claims against the Board are set forth in Paragraph 24 of the Complaint, which states:

> On or about April 10, 2017, the Board adopted a resolution memorializing its decision on Waypoint's Site Plan Application. The Board decided the following, amongst other things: (1) Waypoint is permitted to stay open until 2:00am, (2) Waypoint is permitted to seat approximately 280 patrons at one time, (3) Waypoint is not permitted to allow any bands playing to use amplification and (4) Waypoint must have a valet on during "busy" times. To the knowledge of Mr. Grafas, no other similar restaurant or bar in Brielle has a restriction against a band stand against amplified music, or is required to have a valet. This resolution is arbitrary and capricious, is without any basis in law or fact, is discriminatory and violates Plaintiffs' constitutional rights. The Council held no hearing to discuss the 2018 Restrictions or give Plaintiffs the opportunity to present their position and consequently, the Council imposed such restrictions in flagrant deprivation of Plaintiff's constitutional rights. Such restrictions have had a significant negative impact on Waypoint's business since their enactment. Mr. Grafas has appealed the Board's decisions in New Jersey Superior Court, where a case is currently pending. In the

12

>interim, Mr. Grafas, in good faith, has abided by all the Board's restrictions to his detriment.

(ECF No. 1 ¶ 24.)

The Board contends the above allegations are insufficient to show how the Board's decision constitutes a policy or practice of the Board. (ECF No. 14-1 at 14.) However, as stated above, an unconstitutional policy can be inferred by a single decision taken by the highest appropriate governing body. *See Buck Foston's New Brunswick LLC v. Cahill*, No. 11-03731, 2013 WL 5435289, at *20 (D.N.J. Sept. 27, 2013). Therefore, a single decision of a municipal legislative body can form the basis of a § 1983 claim. *See id.* at *21 (denying motion to dismiss a § 1983 claim against a municipal body's decision denying a business owner a liquor license); *see also McHale v. Bergen Cnty. Imp. Auth.*, No. 11-2159, 2012 WL 3149094, at *4 (D.N.J. July 31, 2012) (denying motion to dismiss a § 1983 claim based on alleged action taken by a county board). As such, Plaintiffs have adequately stated a § 1983 claim by describing a history of discriminatory conduct perpetrated by Brielle and the Board. (*See* ECF No. 1 ¶¶ 10-26.) Accordingly, the Board's Motion to Dismiss is **DENIED.**

### IV.   CONCLUSION

For the reasons set forth above, Brielle's Motion to Dismiss is **DENIED** and the Board's Motion to Dismiss is **DENIED**. An appropriate order will follow.

**Date: May 19, 2020**                           */s/ Brian R. Martinotti*
                                                                  **HON. BRIAN R. MARTINOTTI**
                                                                  **UNITED STATES DISTRICT JUDGE**